## CHARLES W. WINGER v. STATE.

No. A-10908. Dec. 15, 1948.

(201 P. 2d 264.)

John D. Bradley and Shutler & Shutler, all of King-fisher, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., and Wayne B. Smith, Co. Atty., of King-fisher, for defendant in error.

BAREFOOT, P. J.   Defendant, Charles W. Winger, was charged in the county court of Kingfisher county

with the unlawful possession of intoxicating liquor, to wit: 731 pints of whisky; was tried, convicted and sentenced to pay a fine of $200 and to serve 30 days in the county jail, and has appealed.

Defendant presents three propositions for which it is contended this cause should be reversed: that the search warrant was directed to C. C. Crabb, State Investigator, Oklahoma Department of Public Safety; that the affidavit for the search warrant did not state that it was for the purpose of searching a private residence; and that the search warrant was not properly served on defendant.

The first proposition has been decided contrary to the contention of the defendant. In the case of Bowdry v. State, 82 Okla. Cr. 119, 166 P. 2d 1018, 1020, Judge Jones, who wrote the opinion, quoting from the case of Mitchell v. State, 74 Okla. Cr. 416, 127 P. 2d 211, says:

" 'Under 74 O.S. 1941 § 149, the officers and members of the State Highway Patrol and such other officers and investigators as the Commissioner of Public Safety shall designate shall have the authority of other peace officers, including the right and power of search and seizure, but excluding the service of civil process.'

" 'In order for an investigator appointed by the Commissioner of Public Safety to make a lawful search under the above statute, there must be a specific designation in the search warrant directing him to serve the same or if the warrant is specifically directed to a named officer in a certain county, he may assist such officer if the officer is present and requires his aid.' "

In the instant case the search warrant was secured by and upon the affidavit of C. C. Crabb, State Investigator, Oklahoma Department of Public Safety, and was directed to and served by said C. C. Crabb in person.

In the Mitchell case, supra [74 Okla. Cr. 416, 127 P. 2d 212], the warrant was directed "to the sheriff, marshal, policeman or any peace officer in Pontotoc County", and the court held that the search warrant "could only be served by an officer of Pontotoc County or if an officer of Pontotoc County to whom the writ was directed was present and required it, under the statute, the investigators could have assisted in the search."

The second and third propositions may be considered together. The search warrant issued in this case on April 27, 1946, and was based upon the affidavit of C. C. Crabb, State Investigator, Oklahoma Department of Public Safety. The affidavit is as follows:

"State of Oklahoma, County of Kingfisher, ss.

"In the County Court in and for said County and State.

"In the matter of the search of a tract of land beginning at the SE corner of the SW¼ of the SE¼ of Section 31, in Township 15 North, Range 7 West of Indian Meridian, and running thence west ten (10) rods, thence north sixteen (16) rods, thence east ten (10) rods, thence south sixteen (16) rods to the point of beginning, containing one acre according to the government survey thereof, in the possession of Charles W. Winger.

"C. C. Crabb, who being first duly sworn according to law, deposes and says that on or about the 27th day of April, 1946, in Kingfisher County, State of Oklahoma, the following premises are being used as a place where spirituous, vinous, fermented, and malt liquors, and imitations thereof, and substitutes therefor, are received, manufactured, stored and kept for the purposes and intent of being sold, bartered, given away, or otherwise furnished in violation of the prohibitory laws of the State of Oklahoma, to-wit: A tract of land beginning at the SE

178

corner of the SW¼ of the SE¼ of Section 31, in Township 15 North, Range 7 West of Indian Meridian, and running thence west ten (10) rods, thence north sixteen (16) rods, thence east ten (10) rods, thence south sixteen (16) rods to the point of beginning containing one acre according to the government survey thereof, in the possession of Charles W. Winger.

"Affiant further states that the basis of this Complaint and the facts upon which it is founded are as follows, to-wit: that said premises so described aforesaid bear the general reputation of being a place where intoxicating liquors, to-wit: Whisky, wines and beer are had, possessed, kept, and received for the purpose of sale and are sold; that numerous persons whose true and correct names are to this affiant unknown have been seen to enter said premises in a sober condition and later stagger forth from said place under the influence of intoxicating liquors; that numerous persons whose true and correct names are unknown to this affiant congregate in and resort to said premises at all hours of day and night for the purpose of buying, selling and drinking said intoxicating liquors; that numerous persons whose true and correct names are to this affiant unknown have been seen to leave said premises at all hours of the day and night carrying bottles from which they have been seen to drink the contents and the bottles after having been cast aside were examined and bore the odor of intoxicating liquor, to-wit: whisky and alcohol, and beer and/or wine; that different individuals have been seen on said premises drinking from bottles and immediately after drinking have been seen to stagger from intoxication and heard to talk in a thick tongued manner; that said premises are frequented by habitual drunkards and constitute a public nuisance and that said premises are used as a public resort.

"Wherefore, affiant asks that a search warrant issue, directed to a peace officer of said county, commanding him to search the above described premises, and to

seize all liquors there found, together with the vessels in which it is contained, and all inplements, furniture, and fixtures used or kept in connection with such violations of the prohibitory laws of the State of Oklahoma.

"That said premises are located as herein described, in the city or town of Okarche in said county and state and used contrary to the form of the statute in such case made and provided and against the peace and dignity of the state.

"(signed)   C. C. Crabb

"Subscribed and sworn to before me this 27th day of April, 1946.

"(Signed)   Milton W. Priebe

"(Seal)                                        (County Judge)

"I have examined the facts in the above matter and recommend that a warrant be issued.

"(Signed)   Wayne B. Smith,<br>"County Attorney."

The search warrant, with the return of the officer, is as follows:

"State of Oklahoma, County of Kingfisher, ss.

"In the County Court in and for the County of Kingfisher, State of Oklahoma.

"In the Name and by the Authority of the State of Oklahoma:

"To:  C. C. Crabb, State Investigator, Oklahoma Department of Public Safety:

"Whereas, on the 27th day of April, 1946, complaint in writing and on oath was made before me and filed in this County by C. C. Crabb, alleging that the following premises are being used as a place where spiritous, vinous, fermented, and malt liquors, and imitations thereof, and substitutes therefor, are received, manufactured, stored and kept for the purpose and intent of being sold, bartered, given away or otherwise furnished in violation

of the prohibitory laws of the State of Oklahoma, in the County of Kingfisher and State of Oklahoma, more particularly described as follows:

"A tract of land beginning at the SE corner of the SW¼ of the SE¼ of section 31, in township 15 north, range 7 west of Indian Meridian, and running thence west (10) rods, thence north sixteen (16) rods, thence east ten (10) rods, thence south sixteen (16) rods to the point of beginning containing one acre according to the government survey thereof, in the possession of Charles W. Winger, and that liquors are being kept by the said Charles W. Winger for an illegal purpose.

"Therefore, you are commanded forthwith to proceed to said building above described and to search said premises and to seize all liquor there found, together with all vessels in which they are contained and all implements, furniture and fixtures as are kept for such illegal selling, and to safely keep the same and to make return within three days of this warrant showing all acts and things done thereunder, together with a particular statement of all property seized of the person or persons in whose possession the said liquors are found if any, and if no person be found in the possession of said property your return shall so state, and you are further ordered to keep said property securely until final action be had thereon.

"You are further ordered if any such liquor be found, to immediately arrest the person in charge of said liquor and bring him before me at my office in the city of Kingfisher, for examination.

"Given under my hand and seal of the county court of Kingfisher County, this 27th day of April, 1946.
                    "(Signed)    Milton W. Priebe
                              "County Judge.

"Received the foregoing search warrant this 27th day of April, 1946, and executed same at ten o'clock a.m. by searching the premises therein described. Liquor there found consisted of the following: 731 pints of whis-

ky, 138 4/5ths qt. of whisky, 16 qts. of wine, 1 pt. of gin, 9 qts. of brandy, 1½ pts. of sloe gin, 5 qts. rum, 8 pts. applejack.

"The above described liquor is now in the Kingfisher, County jail, at Kingfisher, Oklahoma.

"Signed this 30th day of April, 1946.

"(Signed)   C. C. Crabb
"State Investigator, Oklahoma
Department of Public Safety."

The contention of the defendant is that because the affidavit and search warrant do not contain the exact words "private residence", and by reason of the fact that the intoxicating liquor seized under the search warrant was taken from the residence of defendant, that the search warrant was void and that the motion to suppress the evidence obtained under the same should have been sustained.

It is provided by Tit. 37 O.S. 1941 § 88, as follows:

"No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding house, or place for storage, or unless such residence is a place of public resort."

It is contended by defendant that neither the affidavit nor the search warrant states that a search is to be made of a "private residence", or that it or some part of it is "used as a store, shop, hotel, boarding house or place for storage," or that it is a place of public resort.

It is true that the affidavit and search warrant do not contain the exact words "private residence", but the description of the premises in both the affidavit and search warrant is very exact and describes the premises to be searched by metes and bounds.  There was only one

house located on the premises described, and there is no dispute in the evidence on this point. The intoxicating liquor found by the officers was in this house. It is also stated that the premises described were in the possession of defendant, "Charles W. Winger." It will be noted that the premises described and to be searched contained only one acre of land. It will also be noted that the affidavit, which was introduced in evidence by both the state and the defendant at the request and insistence of defendant, is very elaborate in stating facts upon which the affidavit is based. In the affidavit these expressions are used: "that the premises are being used as a place were spiritous, vinous, fermented and malt liquors * * * are * * * stored and kept for the purpose and intent of being sold"; and: "that said premises are used as a public resort." These expressions are exact provisions set out in the statute permitting the search of a private residence, either of which permits the searching of the same.

We are of the opinion that the words used in the affidavit were amply sufficient to justify the issuance of a search warrant, and that the search warrant was sufficient to permit the searching of all the premises and buildings located on the premises, including the private residence of defendant.

From the return of the officer in this case, which reveals the amount of intoxicating liquor seized in the building which defendant desires to designate as his private residence, it certainly occurs to us that this "private residence" had lost the sanctity of a home, and that it was being used by the defendant as a place of storage of intoxicating liquor, for the purpose of selling in violation of the laws of this state. Under all of these facts, no court should be called upon to give a technical con-

struction of a statute which would permit this defendant to go free. Certainly the punishment inflicted in this case was in no way commensurate with the crime committed.

We have carefully examined the cases cited in defendant's brief. It is unnecessary to refer to them in detail. In many of these cases the facts are entirely different from the facts here presented. Some of the cases were reversed under a state of facts which this court as it is now constituted would in all probability have affirmed. McNew v. State, 44 Okla. Cr. 129, 279 P. 978; Hardy v. State, 35 Okla. Cr. 124, 248 P. 874; Staley v. State, 73 Okla. Cr. 355, 121 P. 2d 324.

This court can certainly take notice of the fact that many defendants in this state are disregarding the fact that a man's residence is his "castle", and instead thereof are using it for the purpose of storing large and excessive quantities of intoxicating liquor for illegal sale in this state, claiming such premises as a "private residence" only for the purpose of evading the enforcement of the law. The facts in the instant case amply justify this conclusion. The courts should not be called upon to apply a technical construction of the law for the benefit of one who does not even see fit to take the witness stand and explain his possession of the large quantity of liquor found, nor deny the possession of the same on the premises described.

The affidavit upon which the search warrant was based stated two of the grounds which justified the search of a private residence, that intoxicating liquor was stored there for the purpose of sale, and that the premises were being used as a place of public resort. The evidence of the officer was that the search warrant was served upon

the defendant, who was present at the time the search was made.

For the reasons above stated, the judgment and sentence of the county court of Kingfisher county is affirmed.

JONES and BRETT, JJ., concur.